# EXHIBIT A

CALLAGY LAW, P.C.
Michael Gottlieb, Esq. (Bar No. 07592-2013)
Samuel S. Saltman, Esq. (Bar No. 90240-2012)
Mack-Cali Centre II
650 From Road, Suite 565
Paramus, New Jersey 07652
Phone: (201) 261-1700
Fax: (201) 549-6236
E-mail: mgottlieb@callagylaw.com

SUPERIOR COURT BERGEN COUNTY
FILED

DEC - 5 2016

*Lawn a. ~Sevanbdoni*
DEPUTY CLERK

*Attorneys for Plaintiff, Kayal Orthopaedic Center, PC o/a/o Christian S.*

|  |  |
|---|---|
| KAYAL ORTHOPAEDIC CENTER, PC, on assignment of Christian S., <br><br> Plaintiff, <br><br> v. <br><br> AETNA, INC., <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY <br><br> DOCKET NO.: BER-L-  -16 <br> *8480* <br><br> CIVIL ACTION <br><br><br> COMPLAINT |

Plaintiff, Kayal Orthopaedic Center, PC, on assignment of Christian S. ("Plaintiff"), by

way of Complaint against Defendant Aetna, Inc., asserts:

### THE PARTIES

1.    At all relevant times, Plaintiff was a healthcare provider in the County of Bergen,

State of New Jersey.

2.    Upon information and belief, Aetna, Inc. ("Defendant") is primarily engaged in

the business of providing and/or administering health care plans ("Plans") or policies ("Policies")

and was present and engaged in significant activities in the State of New Jersey to sustain this

Court's exercise of *in personam* jurisdiction.

## ANATOMY OF THE CLAIM

3.      This dispute arises from Defendant's refusal to properly reimburse Plaintiff for the medically necessary and reasonable services provided to Defendant's participant or insured, Christian S. ("Patient").

4.      On March 10, 2015, Plaintiff provided medically necessary and reasonable services to Patient. See Exhibit A attached hereto.

5.      Specifically, Patient underwent several arthroscopic surgical procedures to repair a labral tear of the left hip. See Id.

6.      Plaintiff obtained an assignment of benefits from Patient in order to bring this claim under the Employee Retirement Income Security Act of 1974, 29 USC §1002, et seq. ("ERISA").  See Exhibit B attached hereto

7.      Pursuant to the assignment of benefits, Plaintiff prepared several Health Insurance Claim Forms ("HICF") formally demanding reimbursement in the amount of $129,250.00 from Defendant for the medically necessary services rendered to Patient. See Exhibit C attached hereto.

8.      Defendant, however, only allowed $3,420.75 for payment of the above referenced treatment. See Exhibit D attached hereto.

9.      Plaintiff engaged in the applicable administrative appeals process maintained by Defendant.  See Exhibit E attached hereto.

10.      Plaintiff requested, among other items, a copy of the Summary Plan Description, Plan Policy, and identification of the Plan Administrator/Plan Sponsor.  See Exhibit E.

11.      Although Defendant has responded to Plaintiff's appeals, it has not provided Plaintiff with a copy of the Summary Plan Description nor has it furnished additional payment.

12.     Upon information and belief, Defendant is the Claims Administrator for the applicable Plan for Patient.

13.     Taking into account any known deductions, copayments and coinsurance, Defendant's reimbursement amounts to an underpayment of $125,829.25.

14.     Accordingly, Plaintiff brings this action for breach of contract, recovery of the outstanding balance, Defendant's breach of fiduciary duty and co-fiduciary duty, and Defendant's failure to establish/maintain a reasonable claims procedure.

## COUNT ONE

### BREACH OF CONTRACT

15.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1-14 of this Complaint and incorporates same by reference thereto.

16.     Patient was entitled to payment of health benefits from Defendant pursuant to a health Plan administered by Defendant.

17.     Patient assigned that right to payment of health benefits to Plaintiff.

18.     Plaintiff filed a claim for payment of those health benefits.

19.     Upon information and belief, Defendant has failed to make full payment of the health benefits Patient and Plaintiff are entitled to under the Plan or Policy.

20.     As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

**WHEREFORE,** Plaintiff demands judgment against Defendant, as follows:

a.     For an Order directing Defendant to pay to Plaintiff $125,829.25;

b.   For an Order directing Defendant to pay to Plaintiff all benefits Plaintiff would be entitled to pursuant the Plan or Policy issued or administered by Defendant;

c.   For compensatory damages and interest;

d.   For attorneys' fees and costs of suit; and

e.   For such other and further relief as the Court may deem just and equitable.

## COUNT TWO

### FAILURE TO MAKE ALL PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

21.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1-20 of this Complaint and incorporates same by reference hereto.

22.   Plaintiff avers this Count to the extent ERISA governs this dispute.

23.   Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a Plan.

24.   Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient

25.   Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

26.   Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA Plan and Policy.

27.   Upon information and belief, Defendant has failed to make payment pursuant to the controlling Plan or Policy.

28.   Plaintiff also alleges that Defendant's decision to deny reimbursement was wrongful.

29.    As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.    For an Order directing Defendant to pay to Plaintiff $125,829.25;

b.    For an Order directing Defendant to pay to Plaintiff all benefits Patient would be entitled to pursuant the Plan or Policy issued by Defendant;

c.    For compensatory damages and interest;

d.    For attorneys' fees and costs of suit; and

e.    For such other and further relief as the Court may deem just and equitable.

### COUNT THREE

### BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 .S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

30.    Plaintiff repeats and re-alleges the allegations of Paragraphs 1-29 of this Complaint and incorporates same by reference hereto.

31.    29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

32.    Plaintiff seeks redress for Defendant's breaches of fiduciary duty and/or breaches of co-fiduciary duty under 29 U.S.C. § 1132(a)(3)(B), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a).

33.    29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

34.    Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses

of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1)

35.     29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

36.     Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

37.     Here, when Defendant acted to deny payment for the medical bills at issue herein, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

38.     Here, Defendant breached its fiduciary duties by:

1.  Failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations;

2.  Participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

3.  Failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and

4.  Wrongfully withholding money belonging to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.  For an Order directing Defendant to pay to Plaintiff $125,829.25;

b.  For an Order directing Defendant to pay to Plaintiff all benefits Patient would be entitled to pursuant the Plan or Policy issued by Defendant;

c.  For compensatory damages and interest;

d.  For attorneys' fees and costs of suit; and

e.  For such other and further relief as the Court may deem just and equitable.

## COUNT FOUR

### FAILURE TO ESTABLISH/MAINTAIN REASONABLE CLAIMS PROCEDURES UNDER 29 C.F.R. 2560.503-1

39.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1-38 of this Complaint and incorporates same by reference hereto.

40.   Plaintiff avers this Count to the extent ERISA governs this dispute.

41.   29 C.F.R. 2560.503-1 requires every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations.

42.    In particular, 29 C.F.R. 2560.503-1 requires that if a claim for benefits is denied in whole or in part, the administrator of every employee benefit plan shall provide written notice of the determination within 90 days after receipt of the claim by the plan.

43.    29 C.F.R. 2560.503-1 further provides that in the event that a claim for benefits is denied, the written notice of the benefit determination must communicate, *inter alia,* **in a manner calculated to be understood by the person claiming benefits:** (I) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

44.    29 C.F.R. 2560.503-1 further provides that every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

45.    In the case at bar, the employee benefit plan from which Plaintiff claimed benefits did not establish and maintain, in its actual operation of the Plan, procedures that ensured that all relevant time limits and appeal procedures were communicated to the person claiming benefits.

46.    As a consequence of Defendant's failure to provide, in a manner calculated to be understood by the person claiming benefits, including Plaintiff as the beneficiary, and written notice of all relevant time limits and appeals procedures of the Plan in connection with its adverse benefit determination rendered to Plaintiff, the Plan has failed to comply with the Claims Procedures requirements of 29 C.F.R. 2560.503-1.

47.    29 C.F.R. 2560.503-1 further provides that in the event an employee benefit plan fails to establish **or** follow claims procedures that comply with that regulation, the person

claiming benefits shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of ERISA on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

  **WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

   a. For an Order that Defendant have not established and maintained claims procedures that comply with 29 C.F.R. 2560.503-1, and that as a result Plaintiff is deemed to have exhausted all required administrative remedies;

   b. For compensatory damages and interest;

   c. For attorneys' fees and costs of suit; and

   d. For such other and further relief as the Court may deem just and equitable.

**<u>NOTICE TO PRODUCE</u>**

  Pursuant to <u>R.</u> 4:18-1, Plaintiff hereby demands that each Defendant produce the following documentation within fifty (50) days as prescribed by the Rules of Court. Additionally please be advised that the following requests are ongoing and are continuing in nature and each Defendant is therefore required to continuously update its responses thereto as new information or documentation comes into existence.

  1. A true and exact copy of any and all Health Insurance Policy, Summary Plan Description, and/or Plan describing the terms and conditions governing the patients who received services rendered by Plaintiff as described in the Complaint filed in this action.

  2. Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by any Defendant entities to the same or similar healthcare provider as Plaintiff.

3.      Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an in network service.

4.      Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an out of network service.

5.      The name, address and contact information of any other party of interest, specifically the Plan Administrator, Claims Administrator, Third-Party Administrator and /or additional Insurance Companies.

6.      The name of the publication, database, documentation, Medicare guidelines etc., of all documents and databases used by Defendant in computing the Usual and Customary Rates or the reimbursement rate for out-of-network providers as defined by the relevant Plan.

7.      Provide copies of any and all algorithm(s), formula(s), procedure(s) or fee schedule(s) used to derive the customary and reasonable reimbursement rate in this matter.

8.      Copies of any and all documentation, including but not limited to manuals, statutes, rules, regulations, books and/or industry standards which refer to, reflect or otherwise relate to the date of service in question or any potential defense to the action in question.

9.      If any Defendant intends to produce the testimony of any expert witnesses at Trial, set forth the names and addresses of each such witness, their area of expertise, the subject matter on which they are expected to testify, and a summary of the grounds of each opinion. Attach a true copy of all written reports provided the Defendant by such witnesses.

## TRIAL COUNSEL DESIGNATION

Michael Gottlieb, Esq., is hereby designated as Trial Counsel in the above matter.

<u>**R. 4:5-1(b)(2) CERTIFICATION**</u>

Pursuant to <u>R.</u> 4:5-1(b)(2), I hereby certify that the matter in controversy is not the subject of any other action pending in any court, is not the subject of a pending arbitration proceeding and is not the subject of any other contemplated action or arbitration proceeding, except as may be set forth below:

**None.**

I further certify that I know of no non-parties who should be joined in the action pursuant to <u>R.</u> 4:28, or who may be subject to joinder pursuant to <u>R.</u> 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts, except as may be set forth below:

**None.**

Dated: Paramus, New Jersey
        November 30, 2016

Respectfully submitted,

CALLAGY LAW, P.C.

By: _____

Michael Gottlieb, Esq.
Mack Cali Centre II
650 From Road – Suite 558
Paramus, New Jersey 07652
Phone: (201) 261-1700
Fax: (201) 549-6236
E-mail: mgottlieb@callagylaw.com

# EXHIBIT A

This report is in a draft status until authenticated by the responsible
provider.

THE VALLEY HOSPITAL                                    OPERATIVE REPORT

ACCT #: V008508611

PATIENT: ███████████                         MR#: M1187607

DATE OF OPERATION: 03/10/2015

SURGEON: Ernest J. Pope, M.D.

ASSISTANT: _____ P.A.

ANESTHESIOLOGIST: Sujnani Adkoli, M.D.

OPERATION PERFORMED: Left hip arthroscopy, arthroscopic labral repair
using 2 pivot anchors, chondroplasty of the acetabulum, pincer
decompression of the acetabulum, synovectomy, and fluoroscopy is used
for the procedure.

PRE-OPERATIVE DIAGNOSIS: Left hip labral tear.

POST-OPERATIVE DIAGNOSIS: Left hip labral tear.

ANESTHESIA: General endotracheal.

FINDINGS:

COMPLICATIONS: No intraoperative complications were noted.

ESTIMATED BLOOD LOSS: Minimal.

IMPLANTS: Two Stryker pivot anchors.

PROCEDURE: The patient was correctly identified as Christian Seiglie.
My initials, JP, were placed on his left hip. The informed consent was
reviewed, reading left hip arthroscopy.

At that point, the patient was brought back to the operating room,
placed supine on the OR table. General endotracheal anesthesia was
placed by Sujnani Adkoli, M.D.  The patient was positioned on the Smith
and Nephew hip distractor apparatus.  A TED stocking was placed on the
right lower extremity for intraoperative DVT prophylaxis.  He received 2
g Ancef approximately 30 minutes prior to his incision.

At that point, appropriate traction was placed in the hip and the hip
was distracted. I then prepped the left hip in standard surgical
fashion.  It was draped.

An intraoperative timeout was performed and the left hip was confirmed
to be the correct hip.

I placed a spinal needle, an area for the anterolateral portal.  I
placed this into the hip joint and then placed a guidewire over top of
this, I placed an incision, and then pivot flow port cannula.  I then
introduced the arthroscope and placed a second mid anterior portal
duplicating the same procedure.  At that point, I used an arthroscopic
samurai blade to open up the capsule. A capsulotomy was performed and

Valley Hospital PCI  "LIVE" (PCI: OE Database VAH)          DRAFT COPY

the 2 portals were connected. The capsule was found to be very tight. An extensive hip synovectomy was performed, not only to address the hypertrophic and hyperemic synovial tissue, but as well to aid in visualization.  The labrum was palpated and found to be torn in the superior anterior section. I debrided the tear in the labrum and found it to be more than 50% of the thickness of the labrum at its base. I then used an arthroscopic shaver. I debrided the acetabulum and performed a pincer decompression. I then placed a pivot 1.4 mm anchor. Care was taken to avoid penetration of the acetabular cartilage. I then used a BirdBeak passer and looped this around the labrum. I tensioned it using a nonlocking sliding knot, then tied multiple half hitches afterwards to secure it.  I palpated the labral repair and found it to be extremely stable. I then repeated this a second time in the more superior portion of the acetabular labral tear, again without complication, and there was excellent tension through the repair.

At that point, released pressure on the hip distractor and there was appropriate placement of the labrum once the hip was reduced back into the socket.  There was no evidence of _____ impingement. At that point, the arthroscope was removed.

The incisions were closed with nylons and then there also injected with Marcaine. A dry sterile dressing was placed.

He was then awakened from anesthesia and transferred to PACU in stable condition.

He will be nonweightbearing on the left hip for a total of 6 weeks and will avoid hip flexion past 90 degrees for a total of 6 weeks.

Job #:  0561038    Dictation Job #:  562083

DD:  03/10/2015  17:01
DT:  03/10/2015  23:36

# EXHIBIT B



Board-Certified Orthopaedic Surgeons
Robert A. Kayal, MD, FAAOS
Edward C. Friedland, MD, FAAOS
Lori G. Weiser, MD, FAAOS

### ASSIGNMENT OF BENEFITS FORM

Name of Insured (print): ███████████████████

Social Security Number: ███████████████████

I request that payment of authorized insurance benefits, including Medicare, if I am a Medicare beneficiary, be made on my behalf to the organization listed below for any equipment or services provided to me by the organization. I expressly assign all my rights in and to such insurance benefits directly to KAYAL ORTHOPAEDIC CENTER, P.C., and authorize KAYAL ORTHOPAEDIC CENTER, P.C. to endorse any and all drafts on my behalf, issued pursuant to this assignment, for the benefit of KAYAL ORTHOPAEDIC CENTER, P.C.

I authorize the release of any medical or other information necessary to determine these benefits or the benefits payable for related equipment or services to the organization, the Health Care Financing Administration, my insurance carrier or other medical entity. A copy of this authorization will be sent to the Health Care Financing Administration, my insurance company or other entity if requested. The original authorization will be kept on file by the organization.

I understand that I am financially responsible to the organization for any charges not covered by health care benefits. It is my responsibility to notify the organization of any changes in my health care coverage. In some cases exact insurance benefits cannot be determined until the insurance company receives the claim. I am responsible for the entire bill or balance of the bill as determined by the organization and/or my health care insurer if the submitted claims or any part of them are denied for payment. I understand that by signing this form I am accepting financial responsibility as explained above for all payment for product received.

In certain circumstances, insurance company may send check for services provided directly to the patient or the guarantor. In such cases, the patient and the guarantor agrees to endorse and forward such a check to KAYAL ORTHOPAEDIC CENTER, P.C. If the patient deposits such a check into a personal account, the patient and guarantor agrees to immediately send a check for the equivalent amount to KAYAL ORTHOPAEDIC CENTER, P.C.

KAYAL ORTHOPAEDIC CENTER, P.C.
385 South Maple Avenue, Suite # 206
Ridgewood, NJ 07450

Name of person signing below (print): ███████████████████

Relationship to insured:

Signature of Insured or Parent/Guardian:

Date: 3/14/11

**KAYAL**
**ORTHOPAEDIC**
**CENTER, P.C.**

Board-Certified Orthopaedic Surgeons
Robert A. Kayal, MD, FAAOS
Edward C. Friedland, MD, FAAOS
Lori G. Weiser, MD, FAAOS

syndrome (AIDS). This information will also be released unless I indicate by checking below that I do not want such information released:

DO NOT RELEASE

_____
Patient or Legal Representative

Date  3 / 14 / 11

_____
Representative's authority to act on behalf of individual

_____
Witness

www.kayalortho.com

# EXHIBIT C

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

AETNA
P O BOX 981106
EL PASO TX 79998-1106

| PICA | | | | | | | | PICA |
|---|---|---|---|---|---|---|---|---|

| 1. MEDICARE | MEDICAID | TRICARE | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (For Program in Item 1) |
|---|---|---|---|---|---|---|---|
| (Medicare#) | (Medicaid#) | (ID#/DoD#) | (Member ID#) | (ID#) | (ID#) | X (ID#) | W168186816 |

| c. RESERVED FOR NUCC USE | c. OTHER ACCIDENT?   ☐ YES  ☒ NO | c. INSURANCE PLAN NAME OR PROGRAM NAME |
|---|---|---|
| | | AETNA |

| d. INSURANCE PLAN NAME OR PROGRAM NAME | 10d. CLAIM CODES (Designated by NUCC) | d. IS THERE ANOTHER HEALTH BENEFIT PLAN?  ☐ YES  ☒ NO  If yes, complete items 9, 9a, and 9d. |
|---|---|---|

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED  SIGNATURE ON FILE   DATE 03/14/2011

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE  I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED SIGNATURE ON FILE

| 14. DATE OF CURRENT ILLNESS, INJURY, or PREGNANCY (LMP)   QUAL. | 15. OTHER DATE  QUAL 444   MM 03 DD 10 YY 2015 | 16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION  FROM   TO |
|---|---|---|

| 17. NAME OF REFERRING PROVIDER OR OTHER SOURCE  DN ROBERT A KAYAL MD | 17a. | 17b. NPI 1053365676 | 18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES  FROM 03 10 2015  TO |
|---|---|---|---|

| 19. ADDITIONAL CLAIM INFORMATION (Designated by NUCC) | 20. OUTSIDE LAB?  ☐ YES  ☒ NO   $ CHARGES |
|---|---|

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY  Relate A-L to service line below (24E)   ICD Ind. 9

A. 71615   B. 71845   C. 71895   D.
E.   F.   G.   H.
I.   J.   K.   L.

22. RESUBMISSION CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A. DATE(S) OF SERVICE From — To  MM DD YY  MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances)  CPT/HCPCS   MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. ID. QUAL | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 03102015 03102015 | 22 | | 29916  LT 79 | A | 25000 00 | 1 | | NPI | 1073783106 |
| 2 | 03102015 03102015 | 22 | | 27036  79 | B | 25000 00 | 1 | | NPI | 1073783106 |
| 3 | 03102015 03102015 | 22 | | 29862  79 | A | 20000 00 | 1 | | NPI | 1073783106 |
| 4 | 03102015 03102015 | 22 | | 29915  79 | C | 20000 00 | 1 | | NPI | 1073783106 |
| 5 | 03102015 03102015 | 22 | | 29863  79 | A | 9900 00 | 1 | | NPI | 1073783106 |
| 6 | 03102015 03102015 | 22 | | 76001  26 | ABC | 3500 00 | 1 | | NPI | 1073783106 |

| 25. FEDERAL TAX I.D. NUMBER   SSN EIN  203136000  ☐ ☒ | 26. PATIENT'S ACCOUNT NO.  C530018Y | 27. ACCEPT ASSIGNMENT?  ☒ YES  ☐ NO | 28. TOTAL CHARGE  $ 103400 00 | 29. AMOUNT PAID  $ 3420 75 | 30. Rsvd for NUCC Use |
|---|---|---|---|---|---|

| 31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)  SIGNED ERNEST J POPE MD   03/24/2016 | 32. SERVICE FACILITY LOCATION INFORMATION  VALLEY HOSPITAL OUTPATIENT  223 NORTH VAN DIEN  RIDGEWOOD NJ 07450-2726  a. 1013912633R | 33. BILLING PROVIDER INFO & PH #  (201) 5600711  POPE, ERNEST JEFFREY MD  784 FRANKLIN AVENUE  FRANKLIN LAKES NJ 07417-1306  a. 1073783106 |
|---|---|---|

NUCC Instruction Manual available at: www.nucc.org      PLEASE PRINT OR TYPE      CR061651      APPROVED OMB-0938-1197 FORM 1500 (02-12)

AETNA
P O BOX 981106
EL PASO TX 79998-1106

# HEALTH INSURANCE CLAIM FORM
APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

| | | | | | |
|---|---|---|---|---|---|
| MEDICARE (Medicare#) | MEDICAID (Medicaid#) | TRICARE (ID#/DoD#) | CHAMPVA (Member ID#) | GROUP HEALTH PLAN (ID#) | FECA BLK LUNG (ID#) | OTHER X (ID#) |

1a. INSURED'S I.D. NUMBER: W168186816

4. INSURED'S NAME

b. OTHER CLAIM ID (Designated by NUCC)

11. INSURANCE PLAN NAME OR PROGRAM NAME: AETNA

c. OTHER ACCIDENT? X NO

d. IS THERE ANOTHER HEALTH BENEFIT PLAN? X NO

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE  SIGNED SIGNATURE ON FILE  DATE 03/14/2011

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE  SIGNED SIGNATURE ON FILE

14. DATE OF CURRENT ILLNESS  15. OTHER DATE QUAL. 444  03 10 2015

17. NAME OF REFERRING PROVIDER OR OTHER SOURCE: DN ROBERT A KAYAL MD   17b. NPI 1053365676

18. HOSPITALIZATION DATES FROM 03 10 2015

20. OUTSIDE LAB? X NO

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY   ICD Ind. 9
A. 71615  B. 71845  C. 71895

| 24.A DATE(S) OF SERVICE From | To | B. PLACE | C. | D. PROCEDURES CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS | H. | I. | J. RENDERING PROVIDER ID # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 03102015 | 03102015 | 22 | | 29916 | LT 79 AS | A | 6250 00 | 1 | | NPI | 1477868487 |
| 03102015 | 03102015 | 22 | | 27036 | 79 AS | B | 6250 00 | 1 | | NPI | 1477868487 |
| 03102015 | 03102015 | 22 | | 29862 | 79 AS | A | 5000 00 | 1 | | NPI | 1477868487 |
| 03102015 | 03102015 | 22 | | 29915 | 79 AS | C | 5000 00 | 1 | | NPI | 1477868487 |
| 03102015 | 03102015 | 22 | | 29863 | 79 AS | A | 2475 00 | 1 | | NPI | 1477868487 |
| 03102015 | 03102015 | 22 | | 76001 | 79 AS | ABC | 875 00 | 1 | | NPI | 1477868487 |

25. FEDERAL TAX I.D. NUMBER 203136000  26. PATIENT'S ACCOUNT NO. C5300182  27. ACCEPT ASSIGNMENT X YES  28. TOTAL CHARGE $ 25850 00  29. AMOUNT PAID $ 413 80

31. SIGNATURE OF PHYSICIAN OR SUPPLIER: MICHAEL G KAYAL RPA-C   SIGNED 03/24/2016

32. SERVICE FACILITY LOCATION INFORMATION
VALLEY HOSPITAL OUTPATIENT
223 NORTH VAN DIEN
RIDGEWOOD NJ 07450-2726
b. 1013912633

33. BILLING PROVIDER INFO & PH # (201) 5600711
KAYAL, MICHAEL G. RPA-C
784 FRANKLIN AVENUE
FRANKLIN LAKES NJ 07417-1306
b. 1477868487

NUCC Instruction Manual available at: www.nucc.org   PLEASE PRINT OR TYPE   CR081651   APPROVED OMB-0938-1197 FORM 1500 (02-12)

# EXHIBIT D



05/04/2015  2:13 PM

Page 1

# ERA Remittance Information By Patient Last Name
## Kayal Orthopaedic Center, PC
266 Harristown Road
Suite 107
Glen Rock, NJ 07452-2348

Check Number:

Payment:  Payer : Aetna
Pay To : Kayal Orthopaedic Center, PC

Bank Routing Number:

ERA Batch: Network Services

Journal : Daily - 05/04/15

Check Date:  04/29/2015
Check Amount: $  1,837.50

Billing Provider ID: 1073783105

Remit. Payer ID: 60054    Plan Code: 60054    Check Number:    Run Date: 04/24/2015  EMC Submitter ID: 203136000

| | | | | | | CS30016Y | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Claim Totals: | | 3.00 | | 2,450.00 | 2,226.00 | 0.00 | 0.00 | 224.00 | | | | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

EJP  29916   26        03/10/2015  1.00  3,500.00  3,500.00  0.00  1  2851  13  W16318G816  EFF6L18BR0000
          76501-26 (Billed)                                              0.00  0.00  PR96          3,500.00  0.00 Guar
Remarks: N20

EJP  29916   LT,79      03/10/2015  1.00  25,000.00  3,444.54  0.00  0.00  21,555.46  P167  25,000.00  0.00 Guar
Remarks: N130

EJP  27036   79        03/10/2015  1.00  20,000.00  20,000.00  0.00  0.00  0.00  PR96  20,000.00  0.00 Guar
          29915-79 (Billed)                                                                Guar
Remarks: N20

| Claim Totals: | | 3.00 | | 45,000.00 | 26,944.54 | 0.00 | 0.00 | 21,555.46 | | | 45,000.00 | 0.00 | Post: | 0.00 | NP: | 0.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Claim Summary:    6.00    50,950.00  29,170.54  0.00  0.00  21,779.46  49,112.50  1,837.50  Post:    1,837.50 NP:    0.00

Items Remitted:    6    Exceptions:  2

Payment Summary:

| Claim Posted: | 1,837.50 | + | Claim NP: | 0.00 | = | Claim Paid: | 1,837.50 |
|---|---|---|---|---|---|---|---|
| Posted Interest: | 0.00 | + | Other PLBs: | 0.00 | = | PLB Total: | 0.00 |
| Allocated: | 1,837.50 | + | Unallocated: | 0.00 | = | Check Amount: | 1,837.50 |

Adjust Codes:
107  —  The related or qualifying claim/service was not identified on this claim.
197  —  Precertification/authorization/notification absent.
45  —  Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement. (Use only with Group Codes PR or CO depending upon liability)
96  —  Non-covered charge(s). At least one Remark Code must be provided (may be comprised of either the NCPDP Reject Reason Code, or Remittance Advice Remark Code that is not an ALERT.)

Remark Codes:
N20  —  Service not payable with other service rendered on the same date.
N130  —  Consult plan benefit documents/guidelines for information about restrictions for this service.

Business Scenarios: Please go to www.caqh.org/OCRECodeCombinations.php for Business Scenarios.

Flags:    c = remitted procedure and/or modifier code differs from billed

Claim Contacts:    1    Unknown    Phone: (888) 632-3862    Fax:    Email:

# EXHIBIT E



**Orthopaedic Surgeons**
Robert A. Kayal, MD, FAAOS
Board Certified Orthopaedic Surgeon
Founder, President & CEO

Edward C. Friedlaender, MD, FAAOS
Board Certified Orthopaedic Surgeon

E. Jeffrey Pope, MD, FAAOS
Board Certified Orthopaedic Surgeon

Joseph M. Bellapianta, MD, FAAOS
Board Certified Orthopaedic Surgeon

Daphne E. Pinkas, MD
Board Eligible Orthopaedic Surgeon

**Foot & Ankle Surgeon**
Chad W. Rappaport, DPM, FACFAS
Board Certified Foot & Ankle Surgeon

**Podiatrist**
Theresa Bonna, DPM
Board Certified Podiatrist

**Physician Assistants**
Michael G. Kayal, PA-C
Chief Physician Assistant

Dean P. Mellas, PA-C

Jillian M. DiLonno, PA-C

James J. Verardi, PA-C

Hoya Salimi, PA-C, CNMT

Mar 25, 2016

AETNA
PO BOX 981106
EL PASO, TX 79998-1106

RE:    Patient name:
ID#:    W168186816
Claim #:
Date of Service: 03/10/2015

     Please consider this letter a **FORMAL FIRST APPEAL** for E. JEFFREY POPE, MD (Tax ID # 20-3136000) of the KAYAL ORTHOPAEDIC CENTER, PC regarding the above dated submitted claim. I am requesting that this appeal be reviewed by an adjudicator who has specific knowledge of Orthopaedic surgery.

     On 03/10/2015, I performed surgery for the left hip. CPT codes: 29916-LT, 27036-79, 29862-79, 29915-79, 29863-79, 76001-26 described as: arthroscopy, arthroscopic labral repair using 2 pivot anchors, chondroplasty of the acetabulum, pincer decompression of the acetabulum, synovectomy, fluoroscopy.

     In my expert medical opinion this surgery was medically necessary for my patient's condition of labral tear.

Please be aware that the total bill for services provided on that day was $103,400.00. I was only reimbursed $ 3420.75. Please review your claim reimbursement determination and issue the underpaid balance immediately. I am requesting that this claim be reviewed by a Orthopaedic Surgeon. I have provided a copy of my operative report, MRI results and the claim form for your review that outlines the intricacies of the case,

Please note the following points when you consider payment for this case:

     • I am an Out-of-Network provider. As such, I do not have to accept in-network payment. Since I am not contracted with your company, the unpaid balance will be the responsibility of the patient.

     • If you do not approve additional payment for this surgery, I want a detailed explanation by a board certified Orthopaedic Surgeon, My fee is absolutely fair, equitable, and is on par with other providers in Bergen County, New Jersey.

Sincerely,

E. Jeffrey Pope, MD .

784 Franklin Avenue, Suite 250     266 Harristown Road, Suite 107     email: kayalortho.com     www.kayalortho.com
Franklin Lakes, NJ 07417     Glen Rock, NJ 07452
P: 201.560.0711 • F: 201.560.0712     P: 201.447.3889 • F: 201.447.9326



May 29, 2015

AETNA
P. O. BOX 981106
EL PASO, TX 79998-1106

RE:    Patient name:    ███████████████
       ID#:             W168186816
       Claim #:
       Date of Service: 03/10/2015

Please consider this letter a **FORMAL FIRST APPEAL** for **MICHAEL G KAYAL, RPA-C** (Tax ID # 20-3136000) of the **KAYAL ORTHOPAEDIC CENTER, PC** regarding the above dated submitted claim. I am requesting that this appeal be reviewed by an adjudicator who has specific knowledge of Orthopaedic surgery.

On 03/10/2015, I assisted in surgery described as Left hip arthroscopy,.
CPT codes:
1. 29916-LT,79,AS          4. 29915-79,AS
2. 27036-79,AS             5. 29863-79,AS
3. 29862-79,AS             6. 76001-26,AS

Please be aware that the total bill for services provided on that day was $25,850.00, I was reimbursed only $413.80. I am requesting that this claim be reviewed by an Orthopaedic Surgeon. I have provided a copy of my operative report for your review that outlines the intricacies of the case,

Please note the following points when you consider payment for this case:

 • This case was performed at a private facility in Bergen County, New Jersey.

 • I am an Out-of-Network provider. As such, I do not have to accept in-network payment. Since I am not contracted with your company, the unpaid balance will be the responsibility of the patient.

 • If you do not approve additional payment for this surgery, I want a detailed explanation by a board certified Orthopaedic Surgeon. My fee is absolutely fair, equitable, and is on par with other providers in Bergen County, New Jersey.

Sincerely,

*Michael G Kayal RPA-C*

Michael G Kayal, RPA-C

| Carrier Name:  AETNA |
|---|

| Carrier Address:   P.O. BOX 981106 |
|---|
| EL PASO, TX 79998-1106 |

**YOU MUST COMPLETE A SEPARATE APPLICATION FOR EACH CLAIM APPEALED**

<table>
<tr><td rowspan="7">A. Provider Information</td><td colspan="2">1. Provider Name: E. Jeffrey Pope, MD</td><td>2. TIN:    203136000</td></tr>
<tr><td colspan="3">3. Provider Group (if applicable): Kayal Orthopaedic Center, P.C.</td></tr>
<tr><td colspan="2">4. Contact Name: ALEKSANDRA</td><td>5. Title: BILLING DEPT</td></tr>
<tr><td colspan="3">6. Contact Address: 784 FRANKLIN AVE, SUITE 250<br>FRANKLIN LAKES, NJ 07417</td></tr>
<tr><td>7. Phone:<br>201-560-07<br>11</td><td>8. Fax:<br>201-560-0713</td><td>9. Email:</td></tr>
</table>

<table>
<tr><td rowspan="4">B. Patient</td><td colspan="2">1. Patient Name: ███████████████</td><td>2. Ins. ID: WI68186816</td></tr>
<tr><td>Medical Record:</td><td colspan="2">3. Have you attached a copy of (check the appropriate response):</td></tr>
<tr><td colspan="3">a. the assignment of benefits?  ☐Yes   ☐No   ☐NA</td></tr>
<tr><td colspan="3">b. the <i>Consent to Representation in Appeals of Utilization Management Determinations and Authorization to Release of Medical Records for UM Appeal and Arbitration of Claims?</i> (Not required for this appeal, but required if the matter goes to arbitration.)<br>☐Yes   ☐No</td></tr>
</table>

<table>
<tr><td rowspan="10">C. Claim Information</td><td>1. Claim # (if known):</td><td>2. Date of Service: 03/10/2015</td></tr>
<tr><td colspan="2">3. Claim filing method (check only one):<br>a. ☐electronic (submit a copy of the electronic acceptance report from Our clearinghouse or Us)<br>b. ☐facsimile (submit a copy of the fax transmittal)<br>c. ☒mail or courier service (submit a copy of the delivery confirmation evidence)</td></tr>
<tr><td colspan="2">4.  Read the following and check the condition(s) that describe this appeal:<br>a. ☐Action has not been taken on this claim<br>b. ☒Dispute of a denied claim → provide date of denial: 04/20/2015<br>c. ☐Claim was paid but not in a timely manner (provide more information):<br>   ☐Yes☐No   Additional information was requested?  If yes, date:   /   /<br>   ☐Yes☐No   Additional information provided?  If yes, date:   /   /<br>   ☐Yes☐No   Interest paid correctly?<br>d. ☒Claim was paid, but the amount is in dispute (not including interest)<br>e. ☐Dispute of carrier's allegations of overpayment or amount of overpayment<br>f. ☐Dispute of carrier's offset amount against this claim</td></tr>
</table>

In an attachment, explain why you dispute handling of the claim.  Be specific about billing codes.  Also, submit (copies only):
- ☆ The relevant HCFA 1500(s) or UB92(s)
- ☆ The relevant Explanation(s) of Benefits or Remittance Advice
- ☆ A statement specifying the line items that you are appealing
- ☆ Information We previously requested that you have not yet submitted, if available
- ☆ Itemization of the contract provisions you believe We are not complying with, if any
- ☆ Pertinent correspondence between you and Us on this matter
- ☆ A description of pertinent communications between you and Us on this matter that were not in writing
- ☆ Relevant sections of the National Correct Coding Initiative (CCI) or other coding support you relied upon IF the dispute concerns the disposition of billing codes
- ☆ Other documents you may believe support your position in this dispute

Signature: *E. J. Pope MD*          Date: Mar 25, 2016

October 14, 2016



**CALLAGY LAW**
Courageous · Compassionate · Committed

Mack-Cali Centre II
650 From Rd – Suite 565
Paramus, New Jersey 07652
Email: info@callagylaw.com
Web: callagylaw.com
Office: 201.261.1700
Fax:    201.261.1775

Sean R. Callagy+*

**Partner**
Michael J. Smikun+*
Benjamin D. Light+
David L. Aromando+*
Brian P. McCann+*
Christopher R. Cavalli+

JoAnne Baio LaGreca+*
Jennifer Chapla+*^
Thomas LaGreca*
James Greenspan+*
Tamara E. Kotsev+
Lynne Goldman+*
Christopher R. Miller+
Samuel S. Saltman+
Michael Gottlieb+*
Alethia Scipione#
Robert J. Solomon+*
Casey L. Wertheim+
Robert B. Kress+

+Member of the New Jersey Bar
*Member of the New York Bar
^Member of the Connecticut Bar
#Member of the Arizona Bar

New York Office:
1133 Broadway
Suite 708
New York, NY 10010
(Reply to NJ Office)

Arizona Office:
668 North 44th St
Suite 300
Phoenix, AZ 85008
'ice: 602.687.5844

Via Mail & Fascimile (859-455-8650)
Aetna
Provider Resolution Team
PO Box 14020
Lexington, KY 40512

     RE:    Provider: Kayal Orthopeadic Center, PC
             Date of Service: 03/10/15
     Patient: ███████
     Claim #: 0258025800000000

Dear Appeal Department Representative,

        We represent the provider named above who has obtained an assignment of benefits from the patient named above as such this firm is the patient's authorized representative for purposes of the appeal requested below.

        Kindly be advised that this firm, and more specifically the undersigned, represents Kayal Orthopeadic Center, PC in the above-referenced matter. Kindly accept this **SECOND NOTICE OF APPEAL.**
**We represent the provider named above who has obtained an assignment of benefits from the patient named above as such this firm is the patient's authorized representative for purposes of the appeal requested below.**

        Attached hereto, please find the following documents that Kayal Orthopeadic Center, PC is relying upon in support of this appeal:

    1.  Health Insurance Claim Form ("HICF") for ███████ and
    2.  Operative Report and relevant records for ███████

        The Health Insurance Claim Forms ("HICF") submitted by the provider to the claim payer and the Explanations of Benefits ("EOB") that that claim payer sends to the provider set forth the amounts billed and amounts paid in this case. The HICF is a single-sided, one page document which lists all of the medical services performed on a particular date or dates of service. The amount billed is seen side-by-side with the procedure or service that supports the charge. The EOB again provides the amount billed for procedure or service performed on a particular date of services. Additionally, the EOB provides the amount paid and, where applicable, codes that correspond to reasons for a disparity in the amount billed and the amount paid. Thus, these two documents are necessarily the starting point for establishing the particular provider's UCR rate in a particular case.

        The Court in Cobo by Hudson Physical Therapy Services v. Market Transition Facility, 293 N.J. Super. 374 (App. Div. 1996), found that it was

necessary to look to a "[providers] billing history, and the disparity in the fees charged to different insurance carriers." Id. at 387. Here, the most effective and meaningful way to determine Kayal Orthopeadic Center, PC's rates is by looking at the amounts billed and the amounts paid by that particular medical provider. The amount billed is critical as it establishes a pattern demonstrating the usual fees billed by the provider. The amount paid is equally important as it establishes that a claim payer has reviewed the bill and determined that the services provided were medically necessary and reasonable.

On behalf of Kayal Orthopeadic Center, PC, we have previously requested that you provide documentation you believe supports your different determination of Usual and Customary Rates. Specifically, we requested that you provide the following documentation at the time of our First Appeal:

- The name, address and contact information of any other party of interest including but not limited to the Plan Administrator and named or un-named fiduciaries, Claims Administrator, Third-Party Administrator, additional Insurance Companies involved in the claims process, and any other entities involved in the claims process;
- A true and exact copy of the applicable Health Insurance Policy, Summary Plan Description, and Plan for the time period at issue;
- The Plan Name, Plan Sponsor (including its name and address for service of legal process); Plan Claim Appeal Procedure, including all deadlines for filing appeals;
- Complete Explanation of Benefits, or Adverse Benefit Determination;
- The specific reason(s) for your denial of the full amount of the claim submitted;
- Reference to the specific Plan provisions on which your determination was based;
- A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
- The methodology by which you computed the Usual and Customary Rate, including copies of all specific rules, guidelines, protocols, or other similar criteria on which you relied in making this benefit determination;
- If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances;
- Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an in network service;
- Copies of representative documents (with private information redacted to comply with privacy laws) showing payments made by the Plan to this healthcare provider and similar healthcare providers for comparable services as an out of network service;
- The name of the publication, database, documentation, Medicare guidelines etc., of all documents and databases used in computing the Usual and Customary Rate, and copies of all such documents;
- Provide copies of any and all algorithm, formula, procedure or fee schedule used to derive the customary and reasonable reimbursement rate in this matter;
- Copies of any and all documentation, including but not limited to manuals, statutes, rules, regulations, books and/or industry standards which refer to, reflect or otherwise relate to the computation of reimbursement for the date of service in question.

To the extent this information has not been previously requested, we are hereby requesting it today. This request for documents is pursuant to United States Department of Labor regulations requiring Plans to make disclosure of its claims procedures. See 29 C.F.R. 2560.503-1. **The Plan is required to provide this requested documentation upon request and free of charge.**

This requested information is critical for us to analyze whether your determinations violate the Plan's fiduciary obligation to make benefit determinations in the interests of the Plan's beneficiaries.  To date, you have not provided this documentation.  As you are aware, the law requires you to provide this documentation based upon our previous request, and provides penalties to the Plan Administrator for failure to comply with this request.  **If you do not turn over all of these requested documents, we will seek to enforce the applicable penalty provisions in a Court of competent jurisdiction.  Furthermore, if you continue to refuse to disclose the basis and methodology of the Plan's benefit determination in this case, we will argue that your unsupported benefit determination is arbitrary and capricious, and/or that it violates the Plan's fiduciary duty in the making of benefit determinations.  If your refusal to provide this documentation leads to us filing a lawsuit, we will seek reimbursement of costs and fees, including reasonable attorney's fees as allowed by Section 502(g) of ERISA, in such action.**

For the foregoing reasons, Kayal Orthopeadic Center, PC respectfully requests that your initial adverse claim determination be modified and additional payment be issued without delay.

Very truly yours,
CALLAGY LAW, PC

Michael Gottlieb, Esq.

Encl.
MG/jc